**In the Matter of RANCHERO MOTOR INN, INC., Bankrupt.**

**WHITTEN MANAGEMENT CORPORATION, Petitioner-Appellant,**

v.

**Loren WETZEL, Trustee, Respondent-Appellee.**

**No. 72–3051.**

United States Court of Appeals, Ninth Circuit.

Dec. 31, 1975.

John L. Rungt (argued), Eberle, Berlin, Kading, Turnbow & Gillespie, Boise, Idaho, for petitioner-appellant.

John C. Ward (argued), Langroise, Clark, Sullivan & Smylie, Boise, Idaho, for respondent-appellee.

OPINION

Before CHAMBERS and KOELSCH, Circuit Judges, and McGOVERN,* District Judge.

CHAMBERS, Circuit Judge:

The bankrupt, Ranchero Motor Inn, Inc., operated a truck stop on the outskirts of Boise, Idaho. The business ran into financial difficulty, and in the summer of 1970, it went into state receivership. At the insistence of its creditors and the receiver, Ranchero entered into a contract by which Whitten Management Corporation agreed to operate the business. Soon thereafter, Ranchero's creditors filed a petition to have it adjudicated a bankrupt. Loren Wetzel was appointed trustee of the estate upon the adjudication.

Wetzel's first acts as trustee were to seek permission to continue operating the business and to procure an extension of time to accept or reject executory contracts of the bankrupt under Sec. 70b of the Bankruptcy Act. [11 U.S.C. Sec. 110(b)]. Both of these requests were granted and Whitten Management continued its operation of the business. On October 2, 1970, the time to accept or reject executory contracts was extended for a period of ninety days. The trustee's schedule of rejected contracts, filed on January 15, 1971, lists the management contract as one of those rejected.

The management contract provided that Whitten Management was to pay the expenses of operation of the business out of revenue and that Whitten Management was to be liable only for "loss or damage sustained by reason of dishonesty or the willful gross negligence of its officers". The contract also required Whitten Management to make a monthly accounting of the operation. Whitten Management was to receive five percent of the gross sales of the truck stop as compensation for its management function.

The management company hired a certified public accountant to prepare the required monthly accountings. These accountings contained distorted figures which reflected a moderate monthly profit, when in fact Ranchero was sustaining sizable losses.

On October 9, 1970, the trustee, who had become suspicious of the accuracy of the accountings, confronted Lindsey Whitten and demanded a more accurate statement of the status of the business. The next accounting, rendered on November 1, 1970, did show the true condition of the bankrupt. A few days later the trustee sought and received the referee's order prohibiting the expenditure of any funds by Whitten Management from Ranchero's bank account without the prior approval of the trustee.

Meanwhile, Ranchero's major creditor began pressing to foreclose its lien on the truck stop property. A sale was conducted on December 15, 1970, and the lienholder was the successful bidder. Whitten Management, one of the unsuccessful bidders, had secured its bid by a $7,000 deposit given to the trustee. Aft-

---

* The Honorable Walter T. McGovern, United States District Judge for the Western District of Washington, sitting by designation.

er the sale, the trustee gave a check for this amount to Whitten Management's former bookkeeper for the truck stop. The check was deposited in the blocked Ranchero bank account and the funds were used to meet Whitten Management's obligations.

Whitten Management made application to the referee for reimbursement for the management fee set by the contract and for the losses sustained during the operation of the truck stop, characterizing them all as expenses of administration under Sec. 62a(1) of the Act, entitled to a first priority by virtue of Sec. 64a(1). 11 U.S.C. Secs. 102(a)(1) and 104(a)(1). Whitten also sought return of the $7,000 bid which it claimed was still held by the trustee by virtue of the money being placed in the Ranchero bank account.

Wetzel objected to the petition, and after a hearing, the referee (now Bankruptcy Judge) disallowed the bulk of the claim in this manner: no allowance would be made for any losses sustained during the period of July 15th, when Whitten Management took over the truck stop, to November 1st, when it rendered the first accurate accounting. For the remainder of the term, November 1st through December 15th, the referee ordered an accounting in which every transaction would be identified. Reimbursement would be allowed only for those expenses which Whitten Management could prove were undertaken for the benefit of the estate. The first part of this disposition was based on the referee's conclusions that the management contract contained an implied term that the business would be operated only at a profit, and that the rendering of inaccurate accountings which concealed the monthly losses constituted "willful, gross negligence" under the contract term. The second part of the referee's disposition was prompted by the information developed at the hearing that many of the debts that Whitten Management incurred were debts designed to further Whitten's own interest as the supposed future owner of the truck stop, rather than debts incurred simply to preserve the value of the business as a going concern. The referee also found that the return of the $7,000 check to the account and the use of the funds to pay off the debts of Whitten Management was an adequate return of the money by the trustee.

On review, the district court rejected the referee's conclusion that the contract implied a condition that the business be only operated if it were making a profit. The court held that the management contract did not require operational expenses to be limited to the point where they were offset by revenues. The court upheld the referee's allocation of the reimbursement of expenses to Whitten Management, however, relying upon the findings of gross negligence and findings that many of the expenses were incurred for the benefit of Whitten Management and not for the benefit of the estate. The court also upheld the referee's determination that Whitten Management had no claim for $7,000 against the trustee based on the bid deposit.

On appeal before us, Whitten Management argues the inadequacy of the allocation of reimbursement of expenses and that it should receive $7,000 as a return of its deposit on its bid for the purchase of the truck stop.

Section 62a(1) of the Bankruptcy Act provides that:

> The actual and necessary costs and expenses incurred by officers, other than referees, in the administration of estates shall, except where other provisions are made for their payment, be reported in detail under oath, and examined and approved or disapproved by the court. If approved, they shall be paid or allowed out of the estates in which they were incurred. [11 U.S.C. Sec. 102(a)(1)].

Trustees and others who have rendered beneficial services to the estate may claim reimbursement and compensation from the estate under this section. 3A Collier on Bankruptcy par. 62.03[4], pp. 1410–12. It is by the judicial standards evolved to measure claims under

this section that we must judge the propriety of the decision of the referee and the district court.

Both parties devote a great deal of discussion to the issues of Whitten Management's status as an independent contractor, whether the trustee assumed the contract between Ranchero and Whitten Management, whether the negligent behavior of Whitten amounted to "dishonesty or intentional gross negligence", and other issues turning on the interpretation of the management contract. This emphasis is misplaced. The bankruptcy court is not restricted in its inquiry into whether expenses are actual and necessary and whether compensation for services is reasonable by an agreement between the trustee and someone he hires to perform services for the estate. *Security-First Nat'l Bank v. Bank of America Nat'l Trust & Savings Ass'n*, 111 F.2d 50 (9th Cir. 1940). Thus what expenses and compensation would be allowed to Whitten Management was a decision for the referee to make in light of the policies supporting the Bankruptcy Act. The decision of the district court upholding the expense allocation made by the referee should be overruled only if it amounts to a clear abuse of discretion. *In re Diplomat Elec., Inc.*, 499 F.2d 342 (5th Cir. 1974).

The referee held that Whitten Management could be reimbursed for the expenses it incurred subsequent to November 1, 1970, which it could demonstrate were for the benefit of the estate and not for the benefit of Whitten Management. This ruling is clearly correct. Whitten Management is not entitled to be reimbursed from the estate for expenses that benefitted Whitten Management as a potential future owner of the truck stop. There was no abuse of discretion in limiting reimbursement in this manner. 3A Collier on Bankruptcy par. 62.03, p. 1404.

Whether the referee was correct in allowing no reimbursement for any expenses incurred prior to November 1, 1970, presents a less simple question. The district court upheld the disallowance of all expenses prior to November 1, 1970, (as opposed to merely disallowing those that were for the benefit of Whitten Management rather than the estate) on the basis of the actions of Whitten in presenting the trustee with misleading financial statements as to the expenses and revenues of the truck stop. The district court and the referee seemed to feel that Whitten's actions were so negligent (or deceitful) that disallowance of reimbursement of all expenses was justified.

The general rule on misconduct and allowances can be stated as:

> Improper conduct on the part of officers or attorneys has frequently been penalized by withholding compensation *or reimbursement* or both. 3A Collier on Bankruptcy par. 62.05[5], p. 1431.

There seems, therefore, to be flexibility on the part of the referee in tailoring the penalty to the nature and the extent of the improper conduct. Certain conduct by its nature would be more calculated to allow forfeiture of compensation but not disallowance of reimbursement of expenses paid for the benefit of the estate. *Cf. Woods v. City Nat'l Bank & Trust Co.*, 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 1146 (1941). Conceivably a lesser quantum of misconduct would be required to support a disallowance of compensation than would allow the court to refuse reimbursement of expenses.

In this case, however, the misconduct seems peculiarly suited to make non-reimbursement of expenses proper. Whitten Management failed in its contractual duty to provide accurate accounting information to the trustee. The financial statements given Wetzel prior to November 1, 1970, misstated the relationship between expenditures and revenues. Without accurate financial information, the trustee could not exercise his supervisory role over the administration of the estate. It is indicative of the potential impact that correct information about the running of the truck stop might have had that, after receiving a correct audit, the trustee petitioned the court

for an order restraining any expenditures of the bankrupt's money without the consent of the trustee. We cannot stay under the facts of this case that it was an abuse of discretion for the referee and district court to disallow any reimbursement to Whitten Management for expenses incurred prior to November 1, 1970.

As to Whitten Management's claim for return of the $7,000 deposit, we find that the referee and district court were correct in holding that the money had already been returned to Whitten. It was returned to an accountant employed by Whitten Management and was used to meet outstanding obligations of the management company. To the extent that any of the money Whitten received back was used to meet expenses for the benefit of the estate after November 1, 1970, it will be repaid as a result of the accounting ordered by the referee. The money has been returned to Whitten Management which therefore has no claim against Wetzel or the estate for that amount.

The judgment of the district court is affirmed.